UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TRAVON WILLIAMS, | No. 2:20-cv-0616 DB P |
| Plaintiff, | |
| v. | ORDER |
| YASSER MANSOUR, et al., | |
| Defendants. | |

    Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

    Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

    Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

### I. Screening Requirement

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

### II. Pleading Requirements

A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

### III. Plaintiff's Allegations

Plaintiff brings this Eighth Amendment medical indifference claim against the following defendants employed at the California Health Care Facility ("CHCF") in Stockton, California: Dr.

Yasser Mansour, physician and surgeon; Omoniyi Akintola, physician's assistant ("PA"); Anh Nguyen-Dao, physical therapist; and Gabriel Williams, Pain and Suffering Management Specialist. Plaintiff seeks damages, injunctive relief, and declaratory relief.

Plaintiff's allegations may be fairly summarized as follows:

In May and June 2018, plaintiff began to experience extreme low back pain, slight shoulder pain, and hip and knee pain. In June, this pain became more acute, causing him sleeplessness and inability to perform his work functions. He was later diagnosed with chronic myofascial pain, also known as fibromyalgia. Before the incidents described herein, plaintiff worked as a unit porter and then an assistant caregiver where his responsibilities included pushing wheelchairs and helping disabled prisoners.

On June 26, 2018, plaintiff was seen via telemedicine by Dr. Yasser Mansour. At this appointment, Dr. Mansour asked plaintiff if he needed a job change. When plaintiff suggested that Dr. Mansour may be confusing him with another inmate, Dr. Mansour said, "Okay, well since you don't have any pain and don't need a job change then I can't do anything for you." Plaintiff responded that he was not seeking a job change, to which Dr. Mansour said with irritation, "We'll send you to x-rays and go from there." Plaintiff then asked for a lay-in so that he could rest. Dr. Mansour declined plaintiff's request and said they'll discuss a job change after the x-rays. Plaintiff construed this comment as a threat.

Dr. Mansour's medical note from this visit, which is attached to the complaint, reveals that plaintiff had been complaining of a dull aching low back pain for more than a month. Plaintiff had also described bilateral hip pain and bilateral knee pain. Dr. Mansour diagnosed plaintiff with myofascial pain with "no alarming signs." (See ECF No. 1 at 18-19.) Dr. Mansour ordered acetaminophen and naproxen for the pain, but plaintiff claims that the body of medical knowledge about fibromyalgia notes that medication only masks the pain, intensifying the actual condition. Plaintiff also alleges that Dr. Mansour ignored evidence of plaintiff's worsening condition, the presence of lumps or nodes, called "trigger points," that require treatment with physical therapy, heat, and special joint/muscle techniques. As a result of Dr. Mansour's failure to

properly treat the fibromyalgia, plaintiff's condition worsened with more lumps appearing on his body and with severe breathing problems when those lumps began to impact his lungs.

On July 11, 2018, plaintiff was examined by another doctor who ordered a 3-day lay-in to permit plaintiff to relax his back. Dr. Lenoir also contacted pain management specialists to address plaintiff's chronic pain.

On August 13, 2018, plaintiff had a second telemedicine appointment with Dr. Mansour. The medical note of this appointment indicates that plaintiff's pain "worsened when lifting, pushing, pulling," which are activities that are inherent in plaintiff's job's duties. Plaintiff claims that a reasonable doctor would have entered lifting restrictions in plaintiff's medical file pursuant to the Americans with Disabilities Act, but plaintiff's medical chrono following this appointment reveals no lifting restrictions.

On September 13, 2018, plaintiff received physical therapy with Jack Carmichael[1], which proved ineffective and in fact exacerbated plaintiff's pain. On October 26, 2018, plaintiff had another physical therapy appointment with Carmichael, who ordered plaintiff to perform the routines and exercises again despite the fact that plaintiff told him they were painful, ineffectual, and increased plaintiff's pain and suffering.

On January 29, 2019, plaintiff appeared before Gabriel Williams, the Pain Management Specialist. Williams accused plaintiff of not being forthcoming about his physical exercise routine after plaintiff advised his doctor that he could not complete them due to pain. Williams also accused plaintiff of exaggerating his pain levels. Williams failed to provide adequate treatment or medication for plaintiff's condition and appeared generally unfamiliar with fibromyalgia and it treatment options.

On February 26, 2019, plaintiff was seen by non-party physical therapist Catherine Ablis. At this appointment, Ablis provided plaintiff with a known and recommended treatment for fibromyalgia patients, after which plaintiff, for the first time, felt definite relief. Plaintiff then saw

---

[1] This individual is not a named defendant in this action.

Ablis again five more times through March 29, 2019. He left each of these appointments feeling the same definite relief.

On April 5, 2019, plaintiff had an appointment scheduled with Ablis, but she was pulled away and never returned to treat plaintiff. Plaintiff claims that she was removed from his caseload and treatment for his pain "through a concerted and conspiratorial effort causing this therapist[] to be relocated outside of CHCF" because her treatment was confirming the cause and necessary treatment for plaintiff's condition.

On April 17, 2019, plaintiff had a physical therapy appointment with defendant Anh Nguyen-Dao. Nguyen-Dao declined to offer the treatment that Adlis previously provided.

On April 18, 2019, plaintiff submitted a medical request form due to trouble breathing because a lump was pressing against his lungs. The next day, plaintiff was seen by PA Akintola, who documented the pain and who also noted that plaintiff's pain medication had been discontinued. PA Akintola did not include any recommendations for relief or order further physical therapy sessions. However, a reasonable accommodation chrono did issue after this appointment that directed plaintiff to avoid heavy lifting.

On May 18, 2019, PA Akintola saw plaintiff again and refused to order an MRI, though he did indicate the need for physical therapy.

**IV. Discussion**

**A. Eighth Amendment Medical Indifference**

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett v. Penner, 439 F.3d 1091,

1096 (9th Cir. 2006). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." Id. at 842.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from a delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also McGuckin, 974 F.2d at 1060. In addition, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

1989) (per curiam). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

The essence of plaintiff's claim is that the defendants failed to properly treat his fibromyalgia. The treatment options that were provided were at odds with documented medical practices for treating fibromyalgia, and these decisions have resulted in the worsening of plaintiff's condition. Plaintiff accuses Dr. Mansour of being aware of plaintiff's condition but ignoring evidence of its worsening. Instead, Dr. Mansour merely ordered x-rays and prescribed pain medication, despite common knowledge amongst medical professionals that such care options are ineffective and in fact contraindicated for the condition. As a result, plaintiff's condition worsened. These allegations are sufficient to proceed against Dr. Mansour.

Plaintiff's allegations against the remaining defendants, however, are insufficient. Physical therapist Nguyen-Dao allegedly declined to offer the treatment that the previous physical therapist, Adlis, provided and that proved helpful. Gabriel Williams is accused of failing to provide adequate pain management and of indifferently prescribing medications and therapy sessions that only worsened plaintiff's condition. Omoniyi Akintola is accused of responding to a request for health care but failing to order or recommend any further treatment. The Court recognizes that fibromyalgia is a serious condition, but plaintiff's allegations against these suggest, at best, a difference of opinion as to the proper course of treatment for plaintiff's condition and, at worst, negligence or even medical malpractice. They do not, however, suggest deliberate indifference. Plaintiff therefore fails to state a claim against any of them.

**B. Americans with Disabilities Act**

Title II of the American with Disabilities Act ("ADA") prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C. § 12132 (1994); Weinrich v. L.A. County Metro Transp. Auth., 114 F.3d 976, 978 (9th Cir.), cert. denied, 522 U.S. 971 (1997). The Supreme Court has held that Title II of the ADA applies to state prisons. Pennsylvania Dept. of Corr. v. Yeskey, 524 U.S. 206, 210 (1998); see also Lee v. City of L.A., 250 F.3d 668, 691 (9th Cir. 2001).

"Generally, public entities must 'make reasonable modification in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'" Pierce v. County of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008) (quoting 28 C.F.R. § 35.130(b)(7)).

To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010); McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004); Weinrich, 114 F.3d at 978.

Furthermore, "[t]o recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). The standard for intentional discrimination is deliberate indifference, "which requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139. The ADA plaintiff must both "identify 'specific reasonable' and 'necessary' accommodations that the state failed to provide" and show that the defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." Id. at 1140.

Although "[t]he ADA prohibits discrimination because of disability," it does not provide a remedy for "inadequate treatment for disability." Simmons, 609 F.3d at 1022 (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners .... The ADA does not create a remedy for medical malpractice.")).

The proper defendant for a claim brought under Title II of the ADA is the public entity responsible for the alleged discrimination. See Everson v. Leis, 556 F.3d 484, 501 & n.7 (6th Cir. 2009) (collecting cases). Title II of the ADA does not provide for suit against a public official

acting in his individual capacity. Id. A plaintiff cannot assert a claim under § 1983 against defendants in their individual capacities to vindicate rights created by the ADA. See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002). Punitive damages are not available under the ADA. Barnes v. Gorman, 536 U.S. 181, 189 (2002).

As best as the Court can determine, plaintiff brings an ADA claim against Dr. Mansour for failing to issue a chrono that would have push and pull restrictions so that plaintiff could continue to perform the duties of his job as an assistant caregiver. Plaintiff also brings this claim against defendant Williams for failing to order adequate pain treatment options for his fibromyalgia. While the Court finds that only plaintiff's allegations against Dr. Mansour state an ADA claim for failure to issue a reasonable accommodation chrono, the claim cannot proceed against this defendant because he is sued only in his individual capacity. The Court does note that defendant Williams is sued in both his individual and official capacities. This is appropriate insofar as defendants "may be sued in their official capacities because suing an individual in his official capacity is treated the same as suing the entity itself." Becker v. Oregon, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). Under this standard, Williams is the only appropriate individual defendant in his official capacity, but his decisions regarding plaintiff's treatment are not themselves actionable.

## IV. Conclusion

Plaintiff's complaint states an Eighth Amendment medical indifference claim against Dr. Mansour and an ADA claim against Gilbert Williams. No other claims are cognizable as pled.

The Court will grant plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If plaintiff does not wish to amend, he may instead file a notice of voluntary dismissal, and the action then will be terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i). Alternatively, plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment). If this option is chosen, the undersigned will issue findings and recommendations, plaintiff will have an opportunity to object, and the matter

will be decided by a District Judge. Lastly, plaintiff may choose to proceed with the complaint as screened.

If plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff should note that although he has been granted the opportunity to amend his complaint, it is not for the purposes of adding new and unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully review this screening order and focus his efforts on curing the deficiencies set forth above.

In addition, plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves a function in the case. Id. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly titled, in bold font, "First Amended Complaint," reference the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is GRANTED.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's motion to exceed the e-filing page limit (ECF No. 3) is GRANTED.

4. Within thirty days from the date of service of this order, plaintiff must file either a first amended complaint curing the deficiencies identified by the Court in this order, a notice of voluntary dismissal, a notice of election to stand on the complaint, or a notice of his willingness to proceed with the complaint as screened; and

5. If plaintiff fails to respond to this order, the Court will recommend the action be dismissed, with prejudice, for failure to obey a court order and failure to prosecute.

Dated: November 12, 2020

/DLB7;
DB/Inbox/Substantive/will0616.scrn

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE